# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION AT JACKSON

_____

| | | |
|---|---|---|
| **DAVID ALAN DUNEHEW**, | ) | C.A. No. 02A01-9604-CH-00079 |
| | ) | Shelby Equity No. 23509-3 R.D. |
| Plaintiff/Appellee. | ) | |
| | ) | HON. D. J. ALISSANDRATOS, |
| VS. | ) | CHANCELLOR |
| | ) | |
| **DONNA LYNN DUNEHEW**, | ) | **AFFIRMED AS MODIFIED AND** |
| | ) | **REMANDED** |
| Defendant/Appellant. | ) | |
| | ) | OPINION FILED: |

**James D. Causey**, Memphis,
**Jean E. Markowitz**, Memphis,
for Defendant/Appellant.

**Charles E. Hodum**, Collierville,
**Mitzi C. Johnson**, Memphis,
for Plaintiff/Appellee.

FILED

**June 09, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

_____

## MEMORANDUM OPINION[1]

_____

### FARMER, J.

David Alan Dunehew (Husband) and Donna Lynn Dunehew (Wife) were divorced by final decree entered November 15, 1995 after approximately 20 years of marriage. Wife has appealed from the final decree challenging the trial court's classification and division of the marital estate and its failure to award rehabilitative alimony or alimony *in futuro*. For reasons hereinafter set forth, we affirm as modified.

The following evidence was adduced at trial: At the time of trial, Husband was 48 years old and Wife, 43. They have two adult children. Husband worked throughout the marriage and for the last ten years has been employed as a financial advisor with the Access Group, a holding company owned by his brother-in-law. Husband's base annual salary is $58,000. He is also subject to a "performance bonus" which he has received in three out of the five years he has been in the

---

[1]**Rule 10 (Court of Appeals). Memorandum Opinion**. -- (b) The Court, with concurrence of all the judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reasons in a subsequent unrelated case.

1

bonus program. For the past four years, he has averaged a gross annual income of $104,000 (excluding any bonus awarded for the year 1995, which Husband testified is calculated at the end of every calendar year). Wife has a high school education plus some continuing education courses. She worked periodically during the marriage, including hostessing at a restaurant and selling real estate. She was a realtor for three years and found the work very stressful, prompting her to seek professional counseling. She has no interest in pursuing a career in real estate. After the parties' separation in November 1993, she obtained employment with the Memphis City School System, working as a secretary at a local high school where she also assists with students having recurring problems. She currently works a 40 hour week earning $8.07 per hour for nine months each year.

Wife testified that she wishes to attain a degree in psychology to counsel adolescents. It is her intention to continue working full-time and attend school in the evenings. She has personally interviewed with representatives at Christian Brothers University, her school of choice, describing it as "[t]he most advantageous program that will give me my degree the soonest . . . ." She has also made inquiry regarding the curriculum at the University of Memphis. She testified that the program at the latter is not accelerated and will require a longer period to complete each course. Her expenses for attendance at Christian Brothers is $8,000 per year.

On cross-examination, Wife stated that she "assumed" the degree requirements at both schools were the same. She agreed that there were psychology courses offered at the University of Memphis in the evening. She did not know the specific courses she would be required to take to earn her degree or what, if any, financial assistance is available to her. She mistakenly referred to the degree she seeks as an "associate's degree." She then clarified that she wished to obtain, with Husband's financial assistance, a "four-year degree."

Wife has been under the care of Dr. John Leite, a psychologist, for 2-1/2 years. Dr. Leite testified that he currently sees Wife "on an irregular basis" for a "[d]iagnostically adjustment disorder with mixed emotional features and dealing with the stress and strains associated with life uncertainties . . . ." It was Leite's testimony that Wife is capable of working full-time and attending school part-time. Leite believed continued psychological counseling would be needed in such a

2

situation, "once or twice a month." Wife also related some gynecological problems resulting in her undergoing a hysterectomy in 1994. Since her surgery Wife considers her health much improved.

The marital estate includes two residences. "Stornaway" is approximately 30 years old and where the parties primarily lived throughout the marriage. It is a four bedroom home of approximately 2400 square feet. It is unencumbered with an agreed value of $105,000. Husband testified that Stornaway "is a little rundown" and in need of some cosmetic work. He currently resides there and estimated his monthly home maintenance costs at approximately $100. Wife currently resides at the two year old "Massey Pointe" home which was completed just three months prior to the couple's separation. It has an agreed value of $225,000 and is encumbered with two mortgages. The parties agree that it has an equity of $60,000. The second mortgage (initially used to pay off the mortgage on Stornaway) is a line of credit which Wife testified she withdrew cash advances against after the couple's separation in order to pay expenses, including credit card debt amounts which were increased by Wife after the separation.

Wife's monthly expenses shown in her Rule 15 affidavit total $3,504.88. This figure includes a monthly minimum payment on credit cards of $617.78, $666.66 for college expenses at Christian Brothers and $150 for home maintenance, if awarded the Stornaway residence. If not awarded this residence, Wife projects a monthly rental expense of $650 (included in the above figure). Husband lists his monthly expenses at $3,760 to include the two monthly mortgage payments totaling $1,590 and $120 for homeowner's insurance and home maintenance and repair. Husband estimated that he could rent an apartment for $750 per month.

Husband testified regarding a bank loan of $50,000 which he obtained a month prior to trial. He stated that the funds were used in part to purchase a 1996 Honda Accord which, after a trade-in value of $1,200, cost $16,931. Another portion of the funds was used to pay Wife's monthly *pendente lite* support of $600, attorney's fees of $3,607, real estate taxes on Stornaway of $1,650 and their daughter's college tuition and expenses totaling approximately $10,000. Approximately $15,000 remains in Husband's bank account. The parties identified total marital liabilities of $255,093.64, which included Wife's attorney's fees as of September 19, 1995 of

$14,637.50 and the first and second mortgages totaling $163,000. The parties listed marital assets totaling approximately $450,000, including Husband's prepaid attorney's fees of $13,531.04. The parties disputed the proper amount to be attributed to Husband's bonus for the year 1995.

After hearing the evidence, the trial court entered a final decree, awarding the divorce to Wife on grounds of inappropriate marital conduct pursuant to the parties' stipulation. The court additionally ruled that Wife is "now healthy" despite suffering from various maladies in the past; that the most equitable division of the marital estate is a "fifty-fifty" division, which in order to accomplish, necessitates the selling of the two marital homes; that the proceeds from the sale of the realty first be used to pay all present encumbrances and then divided equally between the parties; that each party receive marital personalty of $42,281.44; that the personalty awarded to Husband include the 1996 Honda Accord which has no equity; that Husband pay Wife as alimony *in solido* debts totaling $28,091.65; that Husband pay Wife's attorney's fees to the extent of $15,900; that Husband be solely responsible for payment of the $50,000 loan; that Husband be responsible for any of Wife's uncovered medical bills incurred prior to the divorce hearing; and that Wife receive no rehabilitative alimony or alimony *in futuro*.

Wife frames the issues on appeal as follows:

1.  Whether the trial court erred in failing to include Husband's 1995 bonus, monies paid to his attorney pending trial, and a value to the 1996 Honda as marital property?

2.  Whether the trial court erred in its division of marital property?

3.  Whether the trial court erred in ordering the sale of the marital homes?

4.  Whether the trial court erred in failing to award alimony in futuro or rehabilitative alimony to Wife?

Our review of this case is pursuant to Rule 13(d) T.R.A.P., providing for a *de novo* review of the trial court's findings of fact accompanied by a presumption of correctness, unless the evidence preponderates otherwise. We first address the trial court's alleged error in its classification

4

of the parties' property. As noted in **Batson v. Batson**, 769 S.W.2d 849 (Tenn. App. 1988), proper classification of the couple's property is essential as our divorce statutes only provide for the division of marital property. **Batson**, 769 S.W.2d at 856. Therefore, it is incumbent upon the trial court to first classify the couple's property, to give each their separate property and then to make an equitable division of the marital estate. **Wade v. Wade**, 897 S.W.2d 702 (Tenn. App. 1994); **Batson**, 769 S.W.2d at 856.

"Marital property" is defined in T.C.A. § 36-4-121(b)(1)(A) as:

> [A]ll real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

Wife asserts that Husband's 1995 bonus should have been included in the marital estate. Husband testified as follows regarding the method of calculating his bonus:

> I'm basically on a performance bonus. At the first of the year, a one-year CD rate is set, and if we beat that one-year CD rate, then I receive a bonus of 10 percent of the profits minus my salary. If I can give you an example, say, we made 10 percent a year and CD rates were 6, we exceeded the CD rates, so there would be a bonus. If we made profits of a million dollars, 10 percent of that would be my bonus or 100,000, minus the 58,000, which is my salary, so my bonus would be 42. In that setup, as of December 31st, that's calculated. So how we stand at the end of the year depends on what the bonus is.

On cross-examination, Husband admitted that as of the hearing date, September 21, 1995, the Access Group had exceeded the CD rate established for the year. When asked "[a]nd you said that there was no way that you could know what [the bonus] was going to be on the end of December of '95 . . . but if we cashed out everything today that you have in that fund and invested in the CD's, we would have [the amount of profits for the year-to-date] locked, wouldn't we?", Husband answered, "[i]f we did that, yes."

5

The trial court determined that the 1995 bonus was "pretty well made," stating that "there's no question that if he were to continue to invest in such a fashion, that if the market were to turn, that he does have some control over that, . . . it's not in his fiduciary's benefit for him to lose money on his commission because to do so means that the fiduciary is losing money on his profit." However, the trial court chose to treat such as "ordinary income," reasoning as follows:

> But [Husband] will bear the responsibility of the remaining debts[2] there. That's the reason why I'm granting it as an in solido amount. It is a substantial amount that will add up to, . . . a little over $90,000.00 including the attorney's fees; . . . .
>
> . . . .
>
> . . . . I said that from his bonus he could pay this. No, I believe that's just ordinary income. No, I don't see the bonus as . . . a marital asset, it's ordinary income. What I have to do is when I tell somebody you've got to pay that much money, I think it's legitimate that they ask, did you give some thought, Chancellor, as to how I'm supposed to pay for it. And not to worry, I did.

In light of the circumstances of this case, we hold any error by the trial court in failing to include the 1995 bonus as marital property harmless. Although Wife was awarded no part of the bonus, we do not find that she was prejudiced because neither was she ordered to pay any of the marital debt. Awarding a portion of the bonus to Wife under these facts only results in less of an ability by Husband to pay the approximately $90,000 debt, unless a portion thereof is also assigned to Wife. Under these facts, giving the entire bonus to Husband is just as beneficial to Wife as to Husband.

Nor do we find harmful error in the trial court's failure to include a portion of Husband's prepaid attorney's fees as marital property. The trial court specifically ruled that he did not "consider [the prepaid attorney's fees] to be a marital asset." Wife contends that of the $13,531 fees paid by Husband to his attorney pending trial, only $3,000 is designated by Husband on his Rule 15 affidavit as coming from the proceeds of the $50,000 signature loan. Thus, she asserts that the remaining $10,000 represents a part of the marital estate, subject to equitable division. Husband,

---

[2]The record indicates that the trial court is referring to all debts other than those to be paid "out of the common property" - the first and second mortgages on the Massey Pointe home.

however, was ordered to pay the major portion, $15,900 of Wife's attorney's fees, with only those fees arising after trial to be paid by Wife.

Finally, it is argued that the trial court erred in placing no value on Husband's 1996 Honda. It is within the trial court's discretion to place a value on a marital asset that is within the range of the evidence submitted. *Koch v. Koch*, 874 S.W.2d 571, 577 (Tenn. App. 1993). As the valuation of an asset is a question of fact, there is a presumption on appeal that the trial court's valuation is correct. *Smith v. Smith*, 912 S.W.2d 155, 157 (Tenn. App. 1995). The parties stipulated that the Honda had a value of $17,000. Husband testified that he paid approximately $16,900 for the vehicle from a portion of the loan proceeds, which the trial court held Husband solely responsible for repaying. It is contended that because the loan is not secured and there is no lien on the Honda it should have been attributed its stipulated value and that any debt of Husband should be dealt with separately from the "designation and evaluation of the marital assets." Based on the evidence presented and the trial court's decision regarding the distribution of debt, we find that the trial court did not abuse its discretion in assigning no value to the 1996 Honda awarded Husband.

Wife's second and third issues address the trial court's division of the marital estate, which entails the sale of both marital homes, and will be considered together. For Wife's second issue, she argues that the aforementioned assets discussed in issue one should have been equitably divided as marital property and their exclusion from the marital estate resulted in an inequitable division. As we have determined that no harmful error was committed by the trial court in its classification of these items, we do not reach the issue of their division. Therefore, we address the trial court's division of the marital property to the extent that it holds that both marital residences are to be sold. Wife contends that the trial court erred in this regard, particularly in light of her limited education and lack of ability to earn. She asserts that all of her assets will have to be used "to obtain a new residence and support herself." Wife suggests that an equitable division includes an award of the Stornaway property to her and the Massey Pointe home to Husband.

The divorce statutes require the trial court to equitably divide the marital property

without regard to fault. T.C.A. § 36-4-121(a)(1). The trial court has broad discretion in dividing the marital estate and its decision is entitled to great weight on appeal. Its decision is presumed correct unless the evidence preponderates otherwise. *Wade*, 897 S.W.2d at 715; Rule 13(d) T.R.A.P. In dividing the marital estate, the trial court is to consider all relevant factors including those enumerated in T.C.A. § 36-4-121(c). Section 36-4-121(a)(2) empowers the trial court to order the sale of marital property and the proceeds therefrom divided between the parties "where deemed necessary." In this case, the trial court found that the most equitable division was an equal one, necessitating the selling of both marital homes. The fairness of the property division is generally judged by its final results. *Wade*, 897 S.W.2d at 717. Wife testified that she could "live comfortably" at the Stornaway home and that it was the "wisest choice" she could make. However, on cross-examination, she states that she "may be in a bind with the repairs and the upkeep of Stornaway, because I think [it] is maybe 30 years old." We cannot agree that the decision reached by the trial court renders an inequitable result in light of all relevant factors. To award Wife the Stornaway home means the outlaying of additional expense by her for its upkeep and less liquid assets with which to further her education as she has expressed a desire to do.

Finally, we address the issue pertaining to alimony. The trial court found this an inappropriate case for alimony *in futuro* "given the health, the relative young age of [Wife], and given her ability to earn a livelihood in the market place." The trial judge also considered rehabilitative alimony inappropriate, finding:

> [F]rom the proof . . . there is less than a positive history of follow-through by Mrs. Dunehew with her prior occupational choices and the training that she undertook with that. The Court further finds that, from her testimony, it would appear that not only how she expresses herself, but also the facts that she relates, she has only a moderate interest, in this Court's opinion, in her continuing education. She evokes even a lack of knowledge of the degree that she is seeking, nor does she appear to know the certification that she needs for the job that she wishes to pursue. The Court believes that her interest may increase with the full assumption of her educational responsibility by herself.

Factors to be considered in determining whether to award alimony include those identified in T.C.A. § 36-5-101(d). Of these, need and the ability to pay are most critical. *Loyd v.*

*Loyd*, 860 S.W.2d 409, 412 (Tenn. App. 1993).  Husband states his monthly net income as $3,697.44.  His monthly expenses, until the marital homes are sold, are $3,760.  After their sale, the record indicates monthly expenses for Husband of approximately $2,785, including the $750 he estimates to rent an apartment.  Wife has total monthly expenses of $2,070.44, excluding the amounts she designates for credit card payments (awarded to Husband), home maintenance and college expenses and including $100 per month for counseling.  She has a net monthly income of $1,031.60 for the nine months per year she works, for an annual salary of approximately $9,200.  If not awarded alimony *in futuro*, Wife requests that Husband financially assist her to the extent necessary for her to obtain a "four-year degree" in psychology.  It is her preference to attend Christian Brothers University at a cost of $8,000 per year.  The record, however, indicates that she could obtain a like degree at the University of Memphis for considerably less.  Tuition per credit hour is $225 at Christian Brothers compared to $88 at the University of Memphis.  Wife stated that she would need approximately 130 hours to graduate.

Based on the record, we find it necessary to modify the judgment of the trial court to include an award of rehabilitative alimony to Wife in the amount of $500 per month for four years - the approximate time necessary for her to obtain the degree she seeks and allow her to improve her income.[3]  The record indicates that the two homes have not yet been sold.  Until such time, Husband is responsible for the two mortgages on Massey Pointe totaling $1,590.  When considering his monthly income and expenses to include the mortgage payments and the amount of debt for which he is responsible, we find that he is unable to pay the rehabilitative alimony until the two homes have sold.  Therefore, we hold that Husband is to begin paying rehabilitative alimony to Wife the first month following the sale of both marital residences.

The judgment is hereby modified accordingly and is otherwise affirmed.  Costs are assessed equally against the parties.

---

[3]The record indicates that Wife can attain her degree at Christian Brothers in 4 years and 4 months.  She testified that it would take longer to complete her studies at the University of Memphis.  However, we find the amount of rehabilitative alimony awarded sufficient to cover this extended time period if she chooses to enroll there.

9

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
LILLARD, J. (Concurs)

10